May it please the court, I'm Paul Sun, I represent Creadell Hubbard. Mr. Hubbard has made the prima facie showing required for this court to authorize his filing of his second 2255 motion. Mr. Hubbard has shown that it is reasonably likely that in Johnson v. United States, the law made retroactive by the Supreme Court to collateral review that was not previously available to Mr. Hubbard. In Johnson, the Supreme Court held that the residual clause in the Armed Career Criminal Act is unconstitutionally void for vagueness under the Due Process Clause. The rule in Johnson is that the Due Process Clause prohibits increasing a defendant's sentence for a prior conviction where the court is asked to apply this as a standard looking at an ordinary case example of that offense and then deciding for that ordinary case whether it involves an imprecise but qualifying degree of risk. That's the rule in Johnson. It is a new rule. Previously the Supreme Court had held that the residual clause in the Armed Career Criminal Act was not void for vagueness, so it's a new rule, it's a constitutional rule based on the Due Process Clause, is not previously available to Mr. Hubbard, and really the only question that's been presented as argued by the government is whether Johnson is retroactive. Johnson is retroactive because it is a substantive rule. Just on Monday in Montgomery v. Louisiana, the Supreme Court said, the Constitution mandates that substantive rules must be retroactive. Because Johnson is a substantive rule, it is retroactive. It is a substantive rule because it prohibits a category of punishment for a class of defendants based on their offense or status. That's one of the tests that the Supreme Court has set out for when is a rule, a substantive rule, and again, if it's a substantive rule, it's retroactive. Johnson prohibits a category of punishment, that is the enhanced sentence under the Armed Career Criminal Act, for a class of defendants based on their status or offense, their offense being only one that qualifies as a crime of violence under the residual clause by meeting this standard for an ordinary case and the imprecise risk involved that it has a serious potential risk of physical injury. That's why Johnson is a substantive rule, and if it is a substantive rule, it is retroactive. In Mr. Hubbard's case also, we've argued that Johnson, the rule of Johnson, would also apply to his 924C charge and would invalidate the residual clause of the 924C, 924C 3B. And you have to, your burden here is to make that showing prima facie, right? Prima facie showing, yes. I'm sorry, you have to make a prima facie showing that 924C is impermissibly vague under Johnson? No, Your Honor. The prima facie showing goes only to the authorization standard. Is it- Okay, I'm sorry. I thought you answered me, and then you took it back in your response to Judge Harris. It is a- What do you have to show prima facie? That it is a new rule of constitutional law that's been made retroactive by the Supreme Court to collateral review and not previously available to Mr. Hubbard. But doesn't it have to have something to do with Mr. Hubbard's case? It does. The rule Mr. Hubbard has to rely on, as stated in 2255, his claim has to contain, that's the word that's used, the rule. And our contention is the rule of Johnson, which is that the due process clause prohibits increasing a punishment based on a prior conviction where the standard the court is asked to apply is to take the ordinary case for that offense. Well, that's sort of a mushy capsulization of Johnson, isn't it? Well, it's- I mean, Johnson is a little clearer than that, I think. It's not the precise language, Your Honor. I agree with that. Okay. Um, but, but the court has said, uh, the Supreme Court has said you, uh, wouldn't look even particularly at a vagueness challenge.  What does Johnson dictate? And our contention is that it dictates more than just saying that, that the residual cause of the Armed Career Criminal Act is void for vagueness. The principles that, that apply, the court applies there, speak also, uh, and apply in the same way, for example, to the 924C residual clause. So you don't want to talk about the, about the, the text of 924C or of the- Well, I do. I, and that- But you don't think you need to talk about it for purposes of the prima facie, shall we? No. No, Your Honor. We, we can show that, as long as we can show that it's a new rule, which it is, um, it's a constitutional rule, which it clearly is, it's, it's a due process clause, and it's been made retroactive by the Supreme Court to collateral review, that's the case if it's a substantive rule, and it's not available to Mr. Hubbard, then we've made the prima facie showing, and, and the- The killer is not available to Mr. Hubbard. It's not. Right. So, but it has nothing to do with Mr. Hubbard. Correct. He, he- He's not a juvenile. He's not sentenced to life without parole. I, I, I'm, I'm having difficulty connecting your argument that you should be permitted to file a subsequent claim with the facts of this case. The, the, again- Which would take us, would seem to take us to the text of the underlying provision. Your Honor- The court didn't say in Johnson that all residual clauses in all federal statutes are, are unconstitutionally No. It said- In fact, it said just the opposite. It's, it, right. It, but it said residual, this residual clause has two fundamental problems. It uses the ordinary case approach, so we don't look at the facts of the case, we look at the, we take the ordinary case, and that makes it difficult to estimate the risk. How do we know, how do we know what the, what the, what the risk is for the ordinary case? That's one problem. And then the second problem, the court says, these are, these are the two problems that conspire together to make the Armed for a Criminal Act residual clause void for vagueness. The second is, how much risk is required? So how much risk is required for this ordinary case? And the court says, that's simply too vague. It doesn't give the proper notice, and it doesn't, and it leads to the possibility of arbitrary enforcement. Your Honor, those same two problems are extant in the 924C residual clause, which, first of all, uses the ordinary case approach. So as, as the Supreme Court said in Johnson, that gives us a big problem in estimating the risk. And then the same problem exists as well, how much risk is involved? The language, the difference in the language, Your Honor, is under the Armed for a Criminal Act, serious potential risk of physical injury. That's indeterminate, says the court. How much, how much risk is that? Just as indeterminate is substantial risk that physical injury to person or property may be used in committing the offense. You're not saying that you have to resort to the residual clause in terms of whether all 924C offenses would qualify as a predicate? Not all, no, Your Honor. All right, then don't you then have to see whether or not, even in just, I agree, it's just a promethasia at this state, that whether or not the residual clause would be required to make that determination in a 924C offense? Your Honor, we think that's more of a merits argument, which would be dealt with at the district court if the court authorizes the filing of Mr. Hubbard's petition. But Johnson made it clear it was not sweeping away the whole statute. Just that part where you resort to or otherwise creates a substantial risk, but not those specific crimes, those related that violence is an element, clear element, that are listed there. It's just when you have to resort to this catch-all or otherwise, and that's the vagueness. So that being parsed out under Johnson is a part that was abrogated by the opinion. Why wouldn't you have to also look at that part to see whether or not it is required to see whether or not the 924C would be? We would have to prevail on that, Your Honor. But you think that the district court should do that? Yes, Your Honor. Once we grant the authorization. Yes, Your Honor. And we've made the argument in our brief and believe that we would prevail in the district court showing that the offense is armed bank robbery. That's what Mr. Hubbard was charged with, and he was carrying a firearm in connection during and in relation to that offense. And we think we can show in the district court that armed bank robbery is not a viable under the force clause. Armed bank robbery in the fourth circuit, first of all, bank robbery can be established by intimidation. It doesn't require force and violence, can be established by intimidation. Intimidation need not be intentional. That's the Woodruff case. So it can be unintentional intimidation. That's the bank robbery. Doesn't this, when we look at this statute, doesn't this talk about the use of, I agree some could, but doesn't this talk about the use of, not just possessing, but using it in the armed robbery? It does. But again, the court has said it is sufficient to prove the offense if the defendant intimidates, even by giving a note, that that's sufficient to establish the bank robbery, the intimidation element, and it may be sufficient to establish the element of the offense. It's not sufficient to establish, it does not require the use of physical force. So it doesn't meet the force clause. It has to meet either the force clause or the residual clause. It doesn't meet the force clause under 924C, because merely giving a note, which again would be sufficient for the bank robbery charge, doesn't require the use, attempted use, or threatened use of physical force. And we think we can make that argument compellingly, but that's the argument that we would make to show ultimately that the offense, that he can prevail on the offense. We're not contending that Johnson affects the force clause analysis, but to prevail in the district court. In as much as that is a statutory question that's one of law, why can't we do that as well as the district court? Well, Your Honor, what this court is doing is taking, is considering a prima facie showing. And as to the merits, may take a cursory glance, that's what Inouye Billy-Williams says, may take a cursory glance, and ultimately, Your Honor, applying the prima facie test, if it's then authorized to go back to be filed in the district court, where the record is fully developed, that it then could come back up to this court for a full vetting of the legal and the other issues. And it is the case, normally, Your Honor, that even when there is a legal question, this court is not the first to decide. It will, in most cases, send it back to the district court, or have the district court decide on the legal issues. And at this stage, Your Honor, there's really no way for this decision to go any further. If the authorization is denied, there's no basis for a cert petition, there's no basis for a rehearing, that's the end of it. So we contend that the way for this issue, whether Johnson applies to Mr. Hubbard's case in a way that would grant him relief, is for where Mr. Hubbard has made the prima facie showing, to authorize the filing, to send the matter back to the district court for Mr. Hubbard to file his petition, go through the district court process, the record can be developed, we can try to prove that his claims fail, they fail. If we do, the government may appeal. If we don't, it could come back up and then this Johnson question would be presented for full consideration by the court. Now Justice Scalia relied very heavily in Johnson, did he not, on the fact that juries and sometimes judges will be making the first order decision under statutes such as 924C. That's going to be a part of a jury instruction going forward. The jury would be instructed whether the offense is a crime of violence. Including whether there's a substantial risk of the use of this force. Your Honor, I believe it's a question of law and that the jury is instructed if it finds this offense, so if it finds the elements of the armed bank robbery offense and if the jury would be instructed that is a crime of violence. And so for the 924C determination, the jury would have to find then the element. Was it used? Was a firearm used during any connection with that offense? You don't think after 40 juries are going to be instructed that they have to find under 924C counts whether or not there was a risk of physical force? Your Honor, I don't feel comfortable answering that question. I don't have a good sense of that. Okay, fair enough. Thank you. Thank you Mr. Simmons. Mr. Wood? Mr. Wood, I wonder if I could take you on a detour from where you wanted to start just very briefly to my last question. Do you have a view about that? As far as whether juries would be required to be instructed on the, I don't, I can't say that at this point, Your Honor. I'm sorry. Okay, fair enough. Thank you. May it please the court, Seth Wood on behalf of the United States. I'd like to open by noting that Mr. Hubbard and the government have a disagreement about the nature of the rule of Johnson. Mr. Sun talked about Johnson in terms of the analysis and the process that was used. For us, Johnson was about ACCA. Johnson was an ACCA focused case, talked about the problems the court had in applying and it did not call into question any other residual clause through the course of that decision. That matters because the defendant's claim is a challenge to a different statute, 924Cb3. And 16b is part of his guidelines challenge. So in order to rely on a rule, he can't, from our perspective, he can't rely on Johnson. Johnson's about ACCA. He has to stretch Johnson to get over to these other statutory provisions. And so he's not relying on it in that case. And as we discussed in our brief, there are meaningful and substantive differences between the problems of ACCA that were identified in Johnson and the residual clauses of 924C and 16b. Can you describe what those differences are to the extent that they would make a difference in the core of the analysis of Johnson and what Justice Scalia found to be infirm about it? Yeah, they're different statutes, but isn't that the same core problem? Tell me those differences and how that changes the core of the theory of the case. Certainly. Mr. Hubbard relies on the two points, the difficulty in quantifying risk and the ordinary case. But that reads Johnson too narrowly because the court identified several other problems, one of which was an enumerated offense issue problem, the fact that there's a list of enumerated offenses right before the residual clause appeared throughout the decision, including in the section talking about the difficulty in quantifying risk. There was the discussion about the challenge that the court had had and the courts of appeals had had in identifying a consistent standard in applying what the residual clause was. So to back up to the enumerated offense point, there is no enumerated offense list in 924C or 16b. As to the difficulty in applying a standard, this court in Fortes applied the Leocal standard in deciding whether or not sex trafficking by force, fraud, or coercion was a crime of violence. And it applied the standard directly, even after getting briefing on the effect of Johnson. So there's another difference there. A third difference is the fact that the ACCA clause required a court to look at after offense conduct, in essence, things after the offense were completed. Leocal, in more particular Fortes, as it applied Leocal, made clear that the test under, whether you're looking at 16b or 924C, is there a substantial risk that the defendant will use force in the course of committing the offense. So those are several of the differences that we see. You probably think we shouldn't reason this way, but Justice Alito's dissent in Johnson, right, it pretty much says this is all about this ordinary case categorical approach problem, but you think we shouldn't, it doesn't matter what the dissent thinks. Yes. We're looking to the majority. We're looking to Justice Scalia's identification of all those different problems. And, yes. The thing I'm having trouble with is sort of this line between considering the merits, because we're not supposed to, I mean, we're supposed to make sure, I guess, that the petitioner in front of us would actually benefit from the rule he's arguing for, and to that extent we take a cursory look at the merits, make sure it adds up, that this isn't Miller. But beyond that, it feels to me more like a merits argument. Why is it up to the district court to decide whether, you know, on this petition, whether 924C is impermissibly vague under Johnson? Why do we have to decide that? Through the Billy Williams case and also the Bassel case, this court has looked at more than simply the allegations. And the point that we want to make is that the standard that Mr. Sun is arguing for has no limit, as far as I can tell. I understand that perhaps the court could come in and say Miller has nothing to do with 924C. I'm not really sure. Why wouldn't that be a merits determination in essence? Because that's a legal question. You have to ask. That seems to be what we're hinting at or what we're saying in Williams. You know, we're going to look at it to make sure there's a relationship to this, between the argument and this particular petitioner. And that's about as far as we'll go. And it certainly seems like there's a relationship here between the claim he's, you know, between Johnson and the claim he's making. Respectfully, Your Honor, we just see Johnson as ACCA-focused, and particularly the language of the case. And so if the question is, you know, can I kind of connect up my residual clause to the ACCA residual clause, again, it seems like it would open the doors for anyone who's had any kind of problem with the residual clause to step forward and say, Johnson's my case. I should get a chance to go to district court. That would severely undermine the gatekeeping provisions of 2244 and 2055H. This Court in Williams refers to those requirements as stringent. In Taylor, the Supreme Court talked about them being narrow. That kind of language would suggest that it's more the exception, not the rule, for when one wishes to get a successive 2255. Gatekeeping devices are already well in place. It has to be a new rule in substance, constitutional. That's a whole lot of gatekeeping in it. Once you get in there, Johnson doesn't prohibit its application to be broad. It can't be broad. You agree with that, right? I agree with that. All right. Therefore, it's a matter of interpretation as to whether or not the core of the opinion and the new rule, the substantive rule, whether or not it does have applicable or broader than that. Isn't that for the district court to look at that and determine that and create the body of law in that point in terms of now trying to live out what the Supreme Court has now given us, handed down to us? You can't just put it in a bottle and assume it's airtight and that's exactly it because those are the facts of that case. We have to look at it in a broader sense. And why should you be precluded? Because this is a part of the great writ, and that's one of the most powerful parts in terms of giving a chance to successively look at that constitutional question. Well, Your Honor, based on the posture that Mr. Williams is in, we think that this successive petition is in essence premature. We'd like to wait. We think the proper course would be to wait for the Supreme Court to do the work. In Welch? Not quite in Welch. Welch is actually asking the first-order question of is Johnson retroactive at all. And it's an initial 2255 and Sinaki case. And you passed that because the government says it's retroactive. Yes, Your Honor. The better course to take would be to wait for the Supreme Court to make that connection and say, yes, Johnson absolutely applies to the 16th or doesn't apply, to make that decision. At that point, Mr. Hubbard could certainly come in and rely on it. The question about the legal issue that this court in Basel looked at that we think is instructive. In Basel, the defendant asked for successive 2255 based on Miller. And the government said, yes, Miller is a retroactive decision. But what he's really relying on is Graham v. Florida because he was a non-homicide juvenile offender. And the court looked at it and said, after looking through the law, essentially said, actually, yes, you're relying on or your case is governed by Graham, not Miller, and that mattered for purposes of the statute of limitations. So that kind of legal analysis in Basel, the same thing could be done here. And we frankly think it should be done here. Can't the district court wait? I haven't been as well as we could wait since the case is here. If the problem facing showing is made insufficiently, shouldn't we just say, yes, you can file it, and then the district court has the discretion to manage the litigation? I mean, the Supreme Court is not going to decide Section 16 this year, right? There's no chance of that. Isn't its docket full? I think it's fairly full. Pretty full. Are you aware of any case that's pending, sir? Pending, sir? I'm not aware. I'm not saying there isn't, but I'm not aware. So we're a good ways away from getting the Supreme Court's word on this. I understand. Our concern really is that allowing this successive petition, and concluding that he's got a problem facing showing, by simply saying Johnson is like my case, like my statute, would just overrun those gatekeeping provisions and the intent of those provisions. Isn't there at least one circuit court that has said this statute is impermissibly vague under Johnson? The Ninth Circuit has and the Seventh Circuit has, but actually two. It seems to me there are things we could look at about this case that don't necessarily open the floodgates all that wide. It's not like this is some kind of crazy claim. Like, oh my goodness, who would ever think Johnson would apply to 924C? We have two circuit courts saying it absolutely applies and 924C is unconstitutional. As long as we're tipping our hands to look at the merits, can't we look at things like that? I think the posture in those two cases matters. Those are essentially direct review. I understand, but I'm just saying if we're supposed to tip our hands, take just a cursory look at the merits, the first thing I'm seeing is two circuit courts agree with petitioner on the merits. I mean, that seems... It's certainly something that's always persuasive authority. Other circuits certainly can be that. From our perspective, the fact that you've got those cases developing shows that that's a different what you want to call a holding or a rule. It's a different line than what he's relying on here in Johnson. I know there's going to be a way to kind of parse this line, but so you're not saying for us to say the gateway has been met and the motion should be granted, he can file. We have to conclude, and when he files, he will win. Because otherwise, what's the point? I can send it back. You can just do this now. So what is it you're saying we have to do more than say it's retroactive and that he's met the four factors in the gateway? We have to make some merits determination that is somewhere short of you win, I guess. You're not saying we have to say he wins on the merits. So what is it we have to say? I think the question would be what rules he's relying on. And so the things to look at would be what's his claim and what's the rule he's relying on. And I'm not prepared to offer a perfect standard on that, but there'd have to be some sort of relationship there. And we don't think there's a relationship. We think there are two separate lanes here. But two circuit courts say there is a one-on-one relationship. Yes, Your Honor, and those are circuit decisions, which are obviously very important, but they're not Supreme Court decisions. And when Justice Scalia, at the end of Anson, is responding to the dissent in the Solicitor General's brief by saying, in essence, this isn't calling into question all the various residual clauses that are out there, to us it would put, clichés are never good, but a cart before a horse, you'd be taking out of order. Because the way this is designed, the way the statute's designed, the way that I've found in the cases I've looked up, usually you have a Supreme Court decision and usually have a claim that lines up pretty well. And this doesn't line up that well. It's arguable, certainly. And on direct review, maybe you can make an argument. We obviously would oppose it. You're urging us to take sort of an incrementalism approach. Well, we've got it holding, and let's see how they grow this. But it doesn't work that way. The regional circuits, we adjudicate cases all the time. We don't wait. That's why a lot of times the Supreme Court will wait to see whether or not there will be circuit splits and differences. We're a part of that process. We don't just sit on the sidelines and wait for this incrementalism that you're urging. Well, let's see if something, manna's going to fall down or something else and we can make another step in the desert. No! The question is, we have now, and it's two verified circuits that have said, there is broad application. Since we're making this promulgation on cursory look, I think Judge Harris said it well in terms of tipping our hands and saying that, why wouldn't that clearly flow into the authorization? At this point, we see how that develops as circuit jurisprudence. It's made clear, obviously, for the reasons we're laying out in our brief, we don't agree with those circuits in terms of the applicability. But when you have a decision like Tyler from the Supreme Court indicating that multiple decisions of the Supreme Court can be retroactive, they're talking, you can make it a rule that it's retroactive through multiple decisions, forgive me. The assumption in that is that you're going to have the Supreme Court weighing in at some point. And from our perspective, Johnson is separate enough from 924C and 16B that we would urge the court to wait for the Supreme Court to rule on that. Additionally, if I could just make one quick statement about the guidelines. Basically, you're saying, it is so different that it doesn't meet the ocular test to look enough alike. It's so different. Yes, Your Honor. This is like Miller. It's as though his claim were, I'd like to take a Miller claim back to the district court. It's closer to Miller. It's pretty close to Miller, yes, Your Honor. Wow, that's amazing. I'm not saying it's the same. Certainly not. Somewhere in between. It's obviously in between. No, and let me clarify that. I don't mean to suggest that we don't acknowledge that arguments can be made. Arguments are being made. Juvenile life without parole. Okay, I'm just trying to get a visual of what you're saying. Go ahead. Certainly, Your Honor. And we're simply trying to make the point that it's over in that direction toward Miller. I wanted to clarify one point on the sentencing guidelines arguments. And this hopefully is clear from the briefing, but the definition of a crime of violence in the guidelines at the time Mr. Hubbard was sentenced was a different definition than the one that's at issue in the current version of the guidelines. And so that's one big difference. And that does dovetail to some extent with the 924C points that you've already made. If the court has no further questions, thank you. We ask the court to deny Mr. Hubbard's motion. Thank you so much, Mr. Wood. Mr. Son, you have some time reserved. May it please the court. It is not the case that the rule of Johnson has no limits, as the government has argued. It is the case that Johnson says when you've got an ordinary case kind of statute or rule, which we have here, 924C,  that creates a statute of limitations and creates a problem in estimating the risk. And if you then have a standard that the court is asked to apply to that ordinary case that is imprecise, and our contention is it is as indeterminate to say does it involve serious potential risk of physical injury as it is to say substantial risk that physical force will be used in the commission of the offense. Where those two things are present, the statute or the rule is void for vagueness. That's what Johnson dictates. That's why we contend that 924C is covered and that Mr. Hubbard can rely on Johnson. So it's not the case that this is some limitless principle. It is a rule, and we contend Johnson dictates the result, and we're certainly here, and we contend respectfully that we've made at least a prima facie showing that would be sufficient. I want to address also the differences between the, as the government has argued, between the Armed Career Criminal Act and the 924C residual clause. But I want to start with what Justice Scalia in Johnson said is the problem with the ACCA residual clause. Two features of ACCA's residual clause conspired to make it constitutionally vague. Not these other things that the government brought up, enumerated clause, post-event, post-commission of the offense conduct. It's two things, and those two things are the ordinary case and this imprecise standard, and those are exactly present in the Armed Career Criminal Act. And also in Mr. Hubbard's case, he does have, Mr. Hubbard was sentenced under the mandatory guidelines. His case is that old. And at that time, the 4B1.2, the career offender guideline that's at issue, the residual clause,  for what's a crime of violence, and that's the same language as the 924C. So it is all the same for Mr. Hubbard to be challenging, as he does both his 924C charge, but also his career offender designation. It's the same way in which we think it is the case that Johnson's rule dictates that the residual clauses fail. Your Honors, a substantive rule prevents the government from imposing a sentence that it has no power to impose. Johnson is a substantive rule. Mr. Hubbard is serving a sentence of 327 months for armed bank robbery. That's in excess of the statutory maximum. And on top of that, plus 60 months for using and carrying a firearm in connection with an armed bank robbery. Applying Johnson, when we get back to the district court, if the court authorizes the filing, we contend that those sentences will fall. But right now, Mr. Hubbard has made the requisite showing that Johnson is a new rule of constitutional law made retroactive by the Supreme Court to collateral review and not available to Mr. Hubbard previously. Having made that showing, we respectfully request that the court authorize him to file his second 2255 motion in the district court. Thank you. Thank you, Mr. Son. I note that your court appointed. And it is with much gratitude on behalf of this court that I thank you for those services. I think it plays an important part in the role of this court in equal access to justice in this country. Thank you so much, Mr. Wood. I note your able representation in the United States. We'll come down, recounseling. Thank you, Your Honor. And we'll take a brief recess.
judges: Roger L. Gregory, Pamela A. Harris, Andre M. Davis